UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:20 CR 178 HEA ) |
| KEVIN TREYVON HUDDLEN, | ) ) ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

1. **PARTIES**

The parties are the defendant KEVIN TREYVON HUDDLEN, represented by defense counsel GREGORY N. SMITH, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Conspiracy to Distribute a Controlled Substance, a lesser offense necessarily included in Count II of the charge, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's participation in a

1

conspiracy to distribute controlled substances as charged in the Superseding Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to each and every item listed in the Forfeiture Allegation contained in the Superseding Indictment dated November 20, 2020.

**3.   ELEMENTS**

As to the lesser offense necessarily included in Count II, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Beginning on an unknown date but including September 2019 and continuing until May 2020, within the Eastern District of Missouri, two or more persons came to an agreement or reached an understanding to distribute a controlled substance, and;

2.    Defendant knowingly and intentionally joined in the agreement or understanding, and

3.    That at the time he joined in the agreement or understanding, defendant knew its illegal purpose.

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning in September 2019, investigators with the Drug Enforcement Administration and St. Louis County Police Department began investigating drug trafficking activities allegedly being undertaken by co-defendant Jamore Clark and others in the St. Louis metropolitan area. The investigation remained ongoing until early 2020, when agents received judicial authorization to monitor multiple telephones utilized by co-defendant Jason Jones ("Jones"). During that judicially authorized wiretap, investigators intercepted conversations between co-defendant Jones and co-conspirators, discussing money and narcotics.

On February 6, 2020, investigators intercepted telephone calls over the judicially authorized wiretap of Jones' telephone in which Jones and others discussed a then-unknown person to whom they referred as "Tez." During the calls, Jones and others discussed "red hots," which agents believed to be references to dextromethorphan cough syrup, which is commonly abused. At one point, Jones instructed another person to "grab two of them and then, uh, then, yep, take them to Tez." "Tez" was subsequently identified as co-defendant Martez Murphy, who was tasked with cutting and processing fentanyl for Jones.

3

On February 10, 2020, investigators conducted physical surveillance on co-defendant Arie Graham in conjunction with judicially authorized telephone intercepts. In one call, Jones informed Graham, "Tez ready bro." Graham stated, "ain't nobody call though." Jones responded, "I know but we got to grab them." Jones later instructed Graham, "grab them now for real." Approximately ten minutes later, Jones received an incoming call from Kevin Huddlen. Huddlen told Jones, "let me get four of them." One minute after terminating that call, Jones called Graham and advised, "Kevo just called. . . He want four of them." Jones called Graham back approximately 13 minutes later and stated, "go holla at Tez."

Surveillance officers followed Graham until, at approximately 10:35 a.m., Jones called Graham again. Graham informed him, "I'm pulling up at Tez's right now." Graham was then observed arriving at 4649 Whisper Lake Drive, Black Jack, MO. At approximately 10:43 a.m., Jones contacted Huddlen and advised, "yours on the way. Four of them, right." Huddlen confirmed, "yeah, four." Based upon information obtained by way of other judicially authorized wiretaps and statements made by co-conspirators, agents were aware that "four of them" referred to four bags of 50 fentanyl pills each (for a total of 200 pills). Seizures made from co-conspirators revealed that each 50-pill bag contained approximately 5 grams of fentanyl. During the monitoring of various judicially authorized wiretaps, investigators intercepted approximately 15 similar conversations between Jones and Huddlen, during which Huddlen requested or accepted varying quantities of fentanyl from Jones.

On May 28, 2020, federal investigators executed multiple simultaneous search warrants on various locations associated with Jones and his associates and made multiple arrests. As of this date, the charged conspiracy was effectively disrupted. During post-Miranda interviews, multiple co-defendants confirmed Huddlen's involvement and role in the conspiracy.

4

The precise amount of fentanyl for which Huddlen is accountable is difficult to calculate. However, based upon the aforementioned evidence including judicially authorized wiretaps, the parties are in agreement that Huddlen is accountable, based upon his own conduct, for more than 160 grams but less than 280 grams of fentanyl.

5. **STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five years. In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

6. **U.S. SENTENCING GUIDELINES (2021 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the base offense level is 26, as found in Section 2d1.1(c)(6). The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is at least 160 grams, but less than 280 grams, resulting in the agreed Base Offense Level.

5

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Two (2) levels *may* be deducted pursuant to Section 5K2.0(a)(2)(A) if defendant satisfies the criteria set forth in Section 5C1.2(a)(2), (3), (4) and (5). Whether the defendant meets the criteria set forth in Section 5C1.2(a)(1), relating to the defendant's criminal history, is left to the determination of the Court as stated in ¶3F herein. **Defendant understands that he must meet all five criteria to receive the two-level reduction.**

b. **Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

c. **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 23 or 21, depending upon the applicability (or not) of the safety valve.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the


Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

**a. Appeal**: The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues**: In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than

Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, adopts the agreed Total Offense Level, and sentences the defendant within or above that range.

    **b. Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.   OTHER**

    **a. Disclosures Required by the United States Probation Office**: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

    **c. Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime

defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

     **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

     **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

     **f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

     **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future

9

rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of any and all items listed in the Forfeiture Allegation contained in the Superseding Indictment. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9.   ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond

a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

11

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA**

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

2/16/2022
Date

SIRENA MILLER WISSLER #55374MO
Assistant United States Attorney

2-15-22
Date

KEVIN TREYVON HUDDLEN
Defendant

2/15/22
Date

GREGORY N. SMITH
Attorney for Defendant

13